UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MELISSA REICHERT          )
                          )
          Plaintiff,      )
                          )
          v.              )     Case No.: 2:15-CV-139
                          )
SONNY PERDUE, SECRETARY,  )
UNITED STATES DEPARTMENT OF )
AGRICULTURE               )
                          )
          Defendant.      )

**MEMORANDUM AND ORDER**

Plaintiff Melissa Reichert brings this action against Sonny Perdue, Secretary, United States Department of Agriculture ("Defendant") alleging that her employer, the United States Forest Service ("Forest Service"), discriminated against her based on her age and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment of Act of 1976 ("ADEA"). Specifically, Plaintiff alleges that due to her age and sex, Forest Service officials (1) did not select her for a promotion to the Public Services Staff Officer position on the Green Mountain and Finger Lakes National Forests in 2011; (2) reassigned her to the Forest Recreation Program Manager position upon eliminating her Forest Planner position; and (3) retaliated against her for complaining about such alleged discrimination. Defendant has moved for summary judgment, arguing that there is no genuine dispute as to

1

any material fact and that each of Plaintiff's claims fails as a matter of law. For the reasons stated below, Defendant's motion for summary judgment (ECF 40) is **granted**.

## UNDISPUTED FACTS

Plaintiff has been an employee of the Forest Service, an agency organized within the United States Department of Agriculture ("USDA"), since 2001. Aside from a 120-day detail assignment to the Tahoe National Forest in 2016, Plaintiff has been stationed on the Green Mountain and Finger Lakes National Forests ("GMFLNF" or the "Forest") since 2001. The GMFLNF technically consists of two separate national forests: the Green Mountain National Forest, which is located in southwestern and central Vermont; and the Finger Lakes National Forest, which is located in western New York and organized as an administrative unit of the Green Mountain National Forest. The GMFLNF is organized across four ranger districts, each of which is administered by a District Ranger who oversees district-level work and reports directly to the Forest Supervisor. The northern half of the Green Mountain National Forest is administered by a District Ranger for the Rochester and Middlebury Ranger Districts, the southern half of the Green Mountain National Forest is administered by a District Ranger for the Manchester Ranger District, and the Finger Lakes National Forest is administered by a District Ranger for the Hector Ranger

District. The GMFLNF is also organized across five areas of technical programming or "Staff Areas": (1) Administrative Services Staff Area; (2) Ecological Services Staff Area; (3) Public Affairs Staff Area; (4) Public Services Staff Area; and (5) Technical Services Staff Area.

Plaintiff held the position of Forest Planner on the GMFLNF from approximately February 2001 to February 2014. The Forest Planner position was eliminated from the Forest organization as part of a Forest-wide workforce restructuring effort that was formally implemented beginning in or about 2013 (the "Reorganization"). At the time it was eliminated, the Forest Planner position was organized as part of the GMFLNF's National Environmental Policy Act ("NEPA")/Planning staff, which was organized within the Public Services Staff Area.

In 2009, Plaintiff applied for the position of Recreation Program Manager on the GMFLNF, but she was not selected to fill the position. In 2010, Plaintiff sought and completed a 120-day detail assignment as the Acting Recreation Program Manager on the GMFLNF.

In April 2011, Plaintiff applied for a promotion to the position of Public Services Staff Officer on the GMFLNF. A selection panel consisting of three Forest Service employees-- one male chair and two females--was empaneled to assist with the selection of the most-qualified candidate for the Public

Services Staff Officer position. The selection panel reviewed the applications of fifteen candidates, from which the selection panel identified the six most-qualified candidates. The selection panel then narrowed it down to the four most-qualified candidates and conducted interviews with each one using the same standardized interview questions. Plaintiff was interviewed by the selection panel.

The selection panel created a selection package that included a summary of the strengths and weaknesses of the four candidates and the panel submitted that package to GMFLNF Forest Supervisor Colleen Madrid for transmittal to the selecting official for the hiring action, Deputy Regional Forester Retha Lee Nightingale. Madrid reviewed the selection package for accuracy and then transmitted it to Nightingale. Madrid included a cover letter in which she summarized the selection process and also stated:

> It is my recommendation that Donna Grosz Williams be selected to fill this position. I feel strongly that her background, experience and interpersonal skills make her the best candidate for this position. If we are unable to select Donna, I would recommend that we re-advertise the position as the remaining candidates lack the skills to successfully function in this position.

ECF 40-56, p. 2-3.

Nightingale reviewed the selection package in consultation with Acting Regional Forester Logan Lee and selected Grosz for

the Public Services Staff Officer position on or about June 21, 2011. When the Forest Service Selected Grosz for the Public Services Staff Officer position, Plaintiff was fifty-seven years of age and Grosz was fifty-one or fifty-two years of age.  Both Plaintiff and Grosz are female.

On or about November 28, 2011, Plaintiff filed with USDA a Formal Equal Employment Opportunity ("EEO") Complaint of Discrimination, dated November 25, 2011 ("2011 EEO Complaint"). Plaintiff's 2011 EEO Complaint alleged that she had not been selected to fill the Public Services Staff Officer position based on her age. Plaintiff's 2011 EEO Complaint also alleged that she suffered numerous instances of retaliation. On or about June 4, 2012, Plaintiff requested the appointment of an Equal Employment Opportunity Commission ("EEOC") Administrative Judge to conduct a hearing on her 2011 EEO Complaint.

On or about September 12, 2012, Plaintiff filed with EEOC Administrative Judge Kathleen M. Clarke a motion to "amend and consolidate," by which Plaintiff sought to: (a) amend her 2011 EEO Complaint to include a new claim of sex discrimination with respect to her non-selection for promotion to the Public Services Staff Officer Position; and (b) consolidate into her 2011 EEO Complaint numerous new allegations of retaliation that Plaintiff had raised with USDA in the context of a distinct, new EEO complaint. By Order, dated October 25, 2012, Judge Clarke:

(a) denied Plaintiff's motion to amend her complaint to include

the sex discrimination claim; and (b) granted Plaintiff's motion

to consolidate her more-recent EEO complaint with her 2011 EEO

Complaint. In denying Plaintiff's Motion to amend her 2011 EEO

Complaint to include a claim of sex discrimination, Judge Clarke

expressly determined on the merits that Plaintiff had failed to

state a claim of discrimination based on sex.

On or about May 3, 2013, Plaintiff filed with Judge Clarke

a motion to amend her 2011 EEO Complaint to add three new

allegations of retaliation. By Order, dated June 3, 2013, Judge

Clarke denied Plaintiff's motion to amend, upon determining on

the merits that the conduct alleged in the motion failed to

state a claim of retaliation.

By Decision and Order, dated August 8, 2013, Judge Clarke

granted summary judgment to USDA on Plaintiff's 2011 EEO

Complaint. USDA moved for such relief and Plaintiff responded in

opposition that motion. Judge Clarke granted summary judgment to

USDA after considering briefing by both parties on USDA's motion

for summary judgment, dated February 14, 2013. Judge Clarke

granted summary judgment to USDA upon determining, inter alia,

that Plaintiff had: (a) failed to state a prima facie case of

retaliation with respect to any conduct alleged in connection

her 2011 EEO Complaint; and (b) failed to prove that USDA's

legitimate, non-discriminatory explanation for not selecting

Plaintiff to fill the Public Services Staff Officer position was
pretext for age discrimination.

By Final Order, dated July 16, 2014, USDA decided as a
matter of final agency action to implement fully Judge Clarke's
rulings on Plaintiff's 2011 EEO Complaint. Plaintiff received
service of that USDA Final Order on August 1, 2014. The USDA
Final Order provided notice to Plaintiff that, inter alia, she
had the right to appeal Judge Clarke's decisions and the USDA
Final Order by filing an appeal with the EEOC Office of Federal
Operations on an enclosed form within thirty days of her receipt
of the USDA Final Order. The USDA Final Order provided further
notice to Plaintiff that, inter alia, she was required to
provide USDA with proper notice in the event that she filed an
appeal or other papers with the EEOC challenging Judge Clarke's
decisions or the USDA Final Order upon her 2011 EEO Complaint.
The USDA Final Order provided further notice to Plaintiff that,
inter alia, she also had the right to file a civil action in an
appropriate United States District Court within ninety days of
her receipt of the USDA Final Order, if no appeal had been filed
with the EEOC. The USDA Final Order provided further notice to
Plaintiff that, "[u]nless an appeal is filed with the EEOC,
failure to file a civil action within ninety (90) calendar days
may result in the dismissal of your civil action."

Plaintiff did not file an appeal with the EEOC challenging Judge Clarke's decisions or the USDA Final Order issued upon her 2011 EEO Complaint. Plaintiff did not commence a civil action within ninety days of receiving the USDA Final Order on August 1, 2014.

The Complaint that Plaintiff filed in the present action on June 19, 2015, is the first civil complaint that Plaintiff filed in a United States District Court with respect to the subject matter of her 2011 EEO Complaint. All but one of the retaliatory acts that Plaintiff alleges in Count Three of her Complaint were previously alleged by Plaintiff, and resolved by Judge Clarke, in the above referenced proceedings that began with her 2011 EEO Complaint. The one retaliatory act that Plaintiff alleges in Count Three of her Complaint, but which she did not previously allege in the above-referenced proceedings that began with her 2011 EEO Complaint, is the "unjustified reprimand" alleged in Paragraph 56 of her Complaint. The "unjustified reprimand" referred to in Paragraph 56 of Plaintiff's Complaint refers to a letter of reprimand that Plaintiff received from Madrid on or about May 21, 2013. Plaintiff did not report her claim of retaliation in the form of the unjustified reprimand to agency EEO personal.

From April 2010 to November 2014, Madrid held the position of Forest Supervisor on the GMFLNF. As Forest Supervisor, Madrid

was the most senior official on the GMFLNF and was responsible for all aspects of GMFLNF management. A Forest Leadership Team ("FLT") composed of the Forest Supervisor, District Rangers, Staff Officers, and other permanent and ad hoc Forest representatives was responsible for, among other things, developing Forest-wide strategic goals and supporting and advising Madrid with respect to Forest-wide matters, including, but not limited to, budgeting, programming, and workforce planning. The FLT met regularly (usually once a month) to conduct Forest business. Aside from executive sessions, these meetings were open to all Forest Service employees.

The decision to enter into the above-referenced Reorganization was made by Madrid, with the support of the FLT and the approval of the Regional Forester. Madrid determined that workforce restructuring was needed.

In or about August 2010, with respect to certain proposed organizational changes, Plaintiff submitted to the FLT the following comment:

> The Recreation, Lands, NFIM and Planning programs are all tapped-out between NEAT, frontliners, NEPA and staff costs. The recreation program currently does not have the funds for some agreements that are important to the future program, lands cannot cover the cost of administering land acquisitions, even though we have funds for the acquisitions, and NFIM has a backlog of program inventory and monitoring needs.

In 2011, the Regional Office advised that each forest in the
region would be required to maintain an 80/20 fixed-cost ratio,
meaning that each forest was to allocate no more than 80% of an
annual budget to fixed costs, such as salaries.

The FLT identified eleven positions to be eliminated from
the GMFLNF organization. Five of the positions were encumbered
and six were unencumbered. The Forest Planner position then
encumbered by Plaintiff was one of the positions identified for
elimination. As mentioned above, the Forest Planner position was
then part of the GMFLNF's NEPA/Planning Staff, which was
organized within the Public Services Staff Area. In May 2011,
Plaintiff recommended to the FLT that the GMFLNF could address
its budget concerns by combining the Forest Planner and Staff
Officer positions or by combining the Forest Planner and NAL
Coordinator positions, depending on what happened to the Staff
Officer who was assigned to that position. In making the
recommendation, Plaintiff noted that the White Mountain National
Forest in New Hampshire and a number of other national forests
are organized in this very fashion.

The FLT ultimately determined that a dedicated Forest
Planner position was not essential to the GMFLNF organization.
The primary functions of the Forest Planner position concern
coordinating the development of strategies to incorporate
ecosystem management principles into management (including

completing "Forest Plans") and providing information and expert consultation regarding compliance with environmental laws governing the management of the national forests. The National Forest Management Act requires Forest Plan revisions to be made every fifteen years and, in practice, the period between revisions can often exceed twenty years.

The Regional Forester approved the FLT's proposal for reorganization. The FLT conducted a Civil Rights Impact Analysis ("CRIA") to determine whether the desired future condition of the GMFLNF organization would present any potential civil rights impacts and to recommend actions to eliminate, alleviate, or mitigate any such civil rights impacts. The CRIA was prepared in consultation with subject matter experts and GMFLNF employees and it was approved by the Regional Forester and the Acting Civil Rights Director for the Forest Service. The CRIA indicated that the Reorganization would have a greater impact on females than on males because most of the directly affected employees held positions organized within the Public Services Staff area, which was 80% female. The CRIA indicated that the affected employees would be able to be reassigned within the GMFLNF, and all employees were in fact reassigned into vacant positions.

Plaintiff was reassigned to the Recreation Program Manager position. Neither Madrid nor any members of the FLT played a direct role in matching Plaintiff to the Recreation Program

Manager position. That responsibility fell to a Regional Human Resources specialist. During the Reorganization, Plaintiff had told Madrid and other members of the FLT that the Recreation Program Manager position was an "ideal" position for someone in her Landscape Architect job series and she questioned why the position was not being offered in her job series. Plaintiff requested that the Recreation Program manager position description be amended to include her Landscape Architect job series. During her deposition in this action, Plaintiff explained that she felt the Recreation Program Manager position was an "ideal" position for someone in her landscape architect job series "[b]ecause Landscape Architects have training in recreation management and design, particularly site-specific recreation, campground design, trail design, natural resource management."

**DISCUSSION**

## I.   Summary judgment standard

The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). This showing may be made by depositions, affidavits, interrogatory answers, admissions, or other exhibits in the record. Fed. R. Civ. P. 56(c). "The substantive law governing the case will identify those facts that are material, and

'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lily & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted).

## II. Analysis

Plaintiff has asserted three claims against Defendant: age discrimination in her non-selection for a promotion and her reassignment to another position; sex discrimination in non-selection for a promotion and reassignment to another position; and retaliation for attempting to enforce her employment rights. Defendant has moved for summary judgment on all three claims. For the reasons stated below, Defendant's motion for summary judgment on all three claims is granted.

### A.  Abandonment of claims due to partial opposition to motion for summary judgment

In her opposition to Defendant's motion for summary judgment, Plaintiff has failed to respond to any of Defendant's legal arguments with respect to her claim of age and sex discrimination based on non-selection. Plaintiff has also failed

to respond to Defendant's motion for summary judgment on the retaliation claim. The Second Circuit has held that where

> a counseled non-moving party submits "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others," that response "may be deemed an abandonment of the unmentioned claims." Even "where abandonment by a counseled party is not explicit," a court may infer abandonment "from the papers and circumstances viewed as a whole."

*Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (citing *Jackson v. Fed. Exp.*, 766 F.3d 189, 195 (2d Cir. 2014)). The circumstances here support an inference of Plaintiff's abandonment of her age and sex discrimination claims to the extent they are based on her non-selection for promotion. They also support an inference of Plaintiff's abandonment of her retaliation claim.

Defendant clearly moved for summary judgment on all claims. After responding to each of Defendant's proposed undisputed facts, Plaintiff's opposition brief argued only that summary judgment should be denied as to her age and sex discrimination claims based on her reassignment. Plaintiff's opposition brief literally does not mention non-selection or retaliation. This may be the case because Defendant, in its motion for summary judgment, explains in detail how these claims are time barred and therefore barred by sovereign immunity. Defendant explains that to the extent Plaintiff's age and sex discrimination claims

are based on non-selection, those claims are time-barred under 42 U.S.C. § 200e-16(c) and 29 C.F.R. § 1614.407(a). As a result, they are barred by sovereign immunity because Plaintiff first asserted the claims administratively in an EEO complaint and then failed to commence a civil action upon the claims within 90 days of receiving the final agency action on the EEO complaint. Defendant argues that the same is true for Plaintiff's retaliation claim.

The fact that Defendant has presented this compelling argument, combined with the fact that Defendant's opposition to the motion for summary judgment does not mention non-selection or retaliation, leads the court to conclude that Plaintiff has abandoned those claims. The Second Circuit has explained that

> "[p]leadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them." And insofar as summary judgment "is known as a highly useful method of narrowing the issues for trial," it follows that "preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses." Accordingly, "[g]enerally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others," and "a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (citing *Jackson*, 766 F.3d at 196). Based on Plaintiff's partial opposition to Defendant's motion for summary

judgment, the court infers that the claims that were not defended have been abandoned. Plaintiff has thus only preserved her claims of age and sex discrimination to the extent they are based on her reassignment.

## B. Claims time-barred and thus barred by sovereign immunity

Even if Plaintiff had not abandoned her age and sex discrimination claims based non-selection as well as her retaliation claims, they are time-barred under 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(a). Since they are time-barred, they are barred by sovereign immunity. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990).

A federal employee must exhaust all administrative remedies before filing suit under Title VII. *See, e.g., Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008). A federal employee asserting ADEA claims has the option of filing suit in the first instance or pursuing available administrative remedies and then suing if dissatisfied with the administrative results. *See Long v. Frank*, 22 F.3d 54, 56 (2d Cir. 1994). But an employee who elects to first pursue ADEA administrative remedies must exhaust those remedies prior to filing suit. *See, e.g., Smith v. Colvin*, 574 F. App'x 55 (2d Cir. 2014)(citing *Wrenn v. Sec'y, Dep't of Veterans Affairs*, 918 F.2d 1073, 1078 (2d Cir. 1990)).

In her Formal EEO Complaint, Plaintiff asserted her age and sex discrimination claims based on non-selection as well as all but one[1] of the allegations in her retaliation claim. EEOC Administrative Judge Kathleen M. Clarke entered judgment in favor of USDA on these claims. USDA decided as a matter of final agency action to fully implement Judge Clarke's ruling on July 16, 2014. Plaintiff received a copy of that Final Order on August 1, 2014 informing her that she had thirty days to file an appeal with EEOC or ninety days to commence a civil action. 29 C.F.R. §§ 1614.401(a), 1614.402, 1614.407(a); 42 U.S.C. § 2000e16(c). Plaintiff did not do either within the allotted time and instead filed the present action 322 days later, on June 19, 2015. While these time limits are subject to equitable tolling, the court here finds that no circumstances are present to justify an extension. Thus, the court finds that these claims are time-barred.

Failure to comply with any of these procedures, including the 90-day limitations period for filing a civil action, will ordinarily bar judicial relief. *See Irwin*, 498 U.S. at 94 (observing that compliance with Title VII's federal-sector statute of limitations "is a condition to the waiver of

---

[1] This claim is also time-barred and thus barred by sovereign immunity because Plaintiff failed to report the claim to agency EEO personnel as required by 29 C.F.R. § 1614.105(a)(1).

sovereign immunity and thus must be strictly construed.");

*Nghiem v. U.S. Dep't of Veterans Affairs*, 323 F. App'x 16, 17

(2d Cir. 2009)(affirming dismissal of Title VII suit commenced

after expiration of 90-day limitations period); *Long*, 22 F.3d at

56-58 (affirming dismissal of ADEA suit on same grounds).

Thus, even if Plaintiff had not abandoned her non-selection

and retaliation claims, these claims are clearly time-barred and

therefore are barred on sovereign immunity grounds. *See Irwin*,

498 U.S. at 94.

### B.  **Remaining claims: age and sex discrimination based on reassignment**

Plaintiff's remaining (non-abandoned and non-time-barred)

claims are for age and sex discrimination based on her

reassignment to a different position within the Forest Service.

Defendant has moved for summary judgment, arguing that the

position to which Plaintiff was reassigned is identical to the

position she previously held in nearly all material respects and

her reassignment therefore did not constitute an adverse

employment action capable of supporting a discrimination claim.

Defendant additionally argues that even if it were an adverse

employment action, no reasonable factfinder could conclude that

Defendant's proffered reasons for Plaintiff's reassignment are a

pretext for age or sex discrimination. For the reasons stated

below, the court finds as a matter of law that Plaintiff's

reassignment was not an adverse employment action. Even if it was, Plaintiff's claims of age and sex based on reassignment would still fail as a matter of law because Defendant has proffered a non-discriminatory explanation for her reassignment and there exists no record evidence from which a reasonable factfinder could conclude that such explanation is a pretext for age or sex discrimination.

### 1. *McDonnell Douglas* **framework**

Plaintiff has failed to produce any direct evidence of discriminatory intent with respect to her reassignment. Thus, her discrimination claim brought under Title VII and the ADEA is analyzed under the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by proving, by a preponderance of the evidence, that: (1) she was within the protected age group or belonged to the protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003). Under both the ADEA and Title VII, if the plaintiff successfully establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory

explanation for the adverse action. *See id.* at 138. The defendant has only the burden of production, not persuasion--the defendant need only present an explanation that, "taken as true, would permit the conclusion that there was a non-discriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). If the defendant successfully articulates a legitimate, non-discriminatory basis for the adverse action, "the presumption [of discrimination] raised by the *prima facie* case is rebutted and drops from the case." *Id.* at 512. The plaintiff is then left to bear the ultimate burden of proving, by a preponderance of the evidence, that the defendant's explanation for the adverse employment action is a mere pretext for the alleged discrimination. *Id.* at 507-08.

Defendant concedes that Plaintiff satisfies the first two *prima facie* case elements. Plaintiff is a woman over the age of forty who is qualified for the Forest Planner position that she encumbered prior to the Reorganization. However, Defendant contends that Plaintiff cannot establish the other two *prima facie* case elements, most significantly because her lateral reassignment to the Recreation Program Manager position was not an adverse employment action.

### 1. Adverse employment action

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and

conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted). To constitute a "materially adverse change," the change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citation omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (citation omitted). "The key inquiry regarding involuntary transfers is whether the transfer constitutes a negative employment action tantamount to a demotion." *Id.* at 641 (citing *Patrolmen's Benevolent Ass'n v. City of New York*, 74 F.Supp.2d 321, 335 (S.D.N.Y. 1999)).

During the Forest-wide "Reorganization," Plaintiff was reassigned from the position of Forest Planner to the position of Recreation Program Manager. Plaintiff contends that her reassignment was an adverse employment action because there are "stark differences" between the two positions and because the reassignment "caused a significant setback [to her] career," "effectively ended her career," and "impacted her compensation." ECF 45, p. 11-12.

Plaintiff has not only failed to provide record evidence supporting these conclusory allegations but has also consistently contradicted herself with respect to these claims. First, as to her compensation, Plaintiff states that her reassignment caused her to suffer a salary loss equal to the salary difference between a GS-13 position and a GS-12 position--approximately $11,000 per year. ECF 45, p. 12. However, in her deposition, Plaintiff acknowledged that her reassignment was from one GS-12 position to another GS-12 position and that she suffered no change in pay grade, salary, or benefits. ECF 40-54, p. 76. It appears that Plaintiff is conflating the difference in salary related to her non-selection for the promotion (which was a G-13 position) with her reassignment (which did not result in a change in salary). It is unclear whether this was simply an oversight or an intentional misrepresentation.

Aside from her contradictory statements with respect to her compensation, Plaintiff is essentially arguing that her day-to-day duties and overall responsibilities were diminished by the reassignment. Plaintiff is also arguing that she does not have as much experience in "recreation" and therefore other staff have an advantage over her in terms of potential promotions. Plaintiff has failed to present a coherent explanation as to how this reassignment was "tantamount to a demotion." *See Galabya*, 202 F.3d at 640 (citation omitted). Instead, the record shows

that Plaintiff has previously expressed an interest in the Recreation Program Manager position. Plaintiff previously applied for this position and also sought and completed a 120-day detail assignment as the Acting Recreation Program Manager. Further, during the Reorganization, Plaintiff expressed her view that the Recreation Program Manager position was an "ideal" fit for an employee in her job series and she requested the position description be amended to include her job series. ECF 40-54, p. 100.

Plaintiff has failed to produce evidence to show that her reassignment was to a position that was "materially less prestigious, materially less suited to [her] skills and expertise, or materially less conducive to career advancement." *Galabya*, 202 F.3d at 641. Plaintiff was transferred from one GS-12 position to another GS-12 position. Plaintiff also has previously expressed her opinion that the positions were similar and that she was interested in the Recreation Program Manager position. Plaintiff's conclusory statements that she is no longer interested in the position and that the position is a significant step down from the Forest Planner position are not sufficient. Thus, Plaintiff is unable to establish a prima facie case of age or sex discrimination based on her lateral reassignment because the reassignment was not an adverse employment action. Accordingly, summary judgment is appropriate

on the ground that Plaintiff failed to create a genuine issue of material fact on the issue of whether her reassignment to the Recreation Program Manager position was an adverse employment action. *See id*.

## 2.    Pretext for age and sex discrimination

Even if Plaintiff had succeeded in establishing a *prima facie* case, Defendant argues that her age and sex claims based on reassignment would still fail as a matter of law because Defendant has proffered a non-discriminatory explanation for her reassignment and there exists no record evidence from which a reasonable factfinder could conclude that such explanation is a pretext for age and sex discrimination. Upon careful review of the record, the court agrees that no reasonable factfinder could conclude that Defendant's proffered reasons for the Reorganization are a pretext for age and sex discrimination. Thus, even if Plaintiff were able to establish a *prima facie* case, Plaintiff's age and sex discrimination claims based on reassignment would still fail as a matter of law.

The record shows that the decision to abolish the Forest Planner position as part of the Reorganization was based on legitimate budget considerations. The FLT determined that, in its effort to reduce fixed costs, the Forest Planner position could be combined with the NEPA Coordinator position. In fact, in a hypothetical scenario, Plaintiff had recommended this exact

24

combination of positions. Additionally, Plaintiff had previously sought the Recreation Program Manager position and had quite recently expressed her view that that the position is "ideal" for someone in her job series. Given the budget concerns, Plaintiff's acknowledgement that the Forest Planner position could be combined with another position, and Plaintiff's extensive and well-documented prior interest in the Recreation Program Manager position, it is clear that this reassignment was not a pretext for age or sex discrimination against Plaintiff. The decision to reassign Plaintiff to the Recreation Program Manager position was clearly based on non-discriminatory reasons, and no reasonable jury could find otherwise.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF 40) is **granted**.


DATED at Burlington, in the District of Vermont, this 24th day of July, 2018.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge